It's Appeal No. 22-29-09, Osorio-Morales v. Garland, the Attorney General. Mr. Brzezinski, good morning. Good afternoon. Good morning, Your Honors. I will begin with the unable or unwilling issue, as I believe that's likely the most contended point by the government here. The government argues that this issue is before the court as to past and future persecution. As I read the I.J.'s decision, it was only decided as to future persecution. Regardless, it's not supported by substantial evidence. The I.J. focuses on two facts here, that some people were arrested after his grandmother's murder, and that Osorio did not know about additional formal police reports that might have been filed. As to the former, the immigration judge gets it backwards. Rather than showing that the government is effective, it shows that the government is ineffective. While a case might have been started, while some people might have been arrested, the perpetrators were released. There were no convictions. There was no justice in this case. Well, how do you know all that? I believe that comes out in the testimony, and there are some documents in the record from their release. I thought what we knew is that there were one or more individuals charged in response to the burning of the grandmother's home, and that one or more persons were then released. So I think maybe the inference from that is that the case was over, there was no convictions. But do we know that for sure? That, I believe, came from testimony. What don't you think we know? Well, I don't know. I have no idea why they were released. Maybe they were released because there was some kind of legal problem with the case, and the charges were dismissed, and those that were being held were released. I don't know. I mean, I'm just curious about it, but I can't tell from what I've read. Maybe I'm inferring from the facts here, but what I would say is that would be consistent with the country conditions in Honduras. In Honduras, this scenario that I've just discussed exemplifies the sort of problem that exists in Honduras. The law enforcement are ineffective. Impunity is widespread. Police are poorly trained, even in basics like interviewing witnesses, gathering evidence. When was this – the burning of the grandmother's house was in the late 90s? Is that fair? I believe it was either 96 or 99. I can't remember. 97 or something? Yeah. And the criminal case proceeded shortly thereafter? Yes. And after that, the murders continued. As to the lack of additional reports, Osorio testified that everyone knew what was going on, and even the police knew. And I think this makes sense. But what's the basis for that? What's his foundation for saying even the police knew? I didn't see anything in the record that would support that the police knew about this. Well, we had dead bodies. Those dead bodies had to be removed. So they knew maybe individuals had died, but it has to be more specific than that. It has to link up to the Hernandez family and the fact that they're claiming this was the focus. Sure. So we do have the first report, so they do know there is some sort of issue between the Hernandez family and the Osorio family. When you say the first report, are you referring to the house, Grandma's house? Yes. So they do know there's something going on between these families. Additionally, I think some of the earlier submitted—the originals are really hard to read in the record—but the earlier submitted death certificates, I think one of them, for example, says death by violent strangulation. That's not consistent with just somebody dying. That's murder. So based on those reports, based on the first report following the arson— But again, how do you link that up to the death by strangulation being caused by the Hernandez family as opposed to a death? Because they have to be—you have to establish that the government is unwilling or unable to try to control these private actors. And if just saying that there's a death by strangulation certainly might suggest murder or foul play, but there's no linkage in that report to the Hernandez family. So notwithstanding that lack of a link, there was still no investigation of this. There was no attempt to— How do we know that from what's in the record? How did you establish that? Because again, it's your burden. Sure. And I think that comes from the testimony and some of the statements submitted by his family. They just said that nothing was done about any of this. Well, what is in the record about whether or not the family reported those deaths to the police? Sure. So they did not report these deaths to the police. And as they explained it, they believed the police were ineffective and that it would only serve to deepen the feud, that it would not help because the police would not apprehend anyone. And in addition to that, it would anger the Hernandez family even more and cause additional problems. But you see, the problem we have, right, is that if they don't seek police help and don't report it, it's difficult for us to conclude from that that while the police wouldn't have done anything had they been asked because in 1996, the police at least arrested people. Sure. And they did arrest them there. Again, I don't see any sort of resolution from that. So I think that experience coupled with the country conditions in this case is suggesting that they're correct, that this would have been futile to go to the police. Mr. Osinski? I'm sorry, just to clarify. The fact that the individuals who were charged and at some point locked up for the burning of his grandma's house, the fact that they were released, that's your argument that that alone is sufficient to justify them not going back? Coupled with the country conditions that do support the widespread impunity in Honduras, yes. Do we have anything about any members of the family, I guess maybe most especially male members of the family or extended family, experiencing difficulties after 2015? Not in the record, and I'm not aware of anything outside of the record. I could confer with my client and file a status report if you'd like to know. Okay, so doesn't that support the conclusion that this feud has mitigated at least to a degree that the violence is not continuing? And there are some references in here to some suicides by family members, but no suggestion the suicides are connected to the tension with the Hernandez family, correct? So apart from the testimony of my client, there's no sort of suicide letter, and obviously we can't read minds and figure out why the suicides occurred. Now, what I would say about the time period that has elapsed since the last incident is that's consistent with the rest of this feud. This feud began in 1996. The first person was killed then. Then the mother was, I think, killed in 97, so that's a year, and then in 99, the next one, and then 2005. So there's been periods of years before where nothing has happened, and then all of a sudden something has happened again. So I think that there's an objective standard. How could that support that he's going to be objectively, he's going to be singled out for persecution in the future, if he's never had any direct threats against him and his family living in the same area haven't had any direct threats for over eight years, approximately eight years? So turning to the objective reasonableness issue, that's not a particularly demanding standard. I think the Supreme Court has said maybe a one in ten chance of persecution, and we have a lot of harm here. There has been some periods in which there hasn't been any harm, but then it restarted again. But given the standard here that it's not particularly demanding, I think we get to an objective reasonableness standard here. I think you mentioned that we don't have any evidence that somebody is looking for him in Honduras. That's true, but it's not necessarily fatal here when weighed against the repeated harm. Additionally, it's not really surprising that we don't have this evidence. The Hernandez family is not going to broadcast who their next target is. That wouldn't really be a very smart thing for them to do. And the fact that Osorio hasn't been harmed or threatened before, that's also true. But other people in the family have been harmed with a motive that's equally applicable to Osorio, family membership. So it's not unreasonable or it is reasonable to assume that he would be harmed for that same motive. Additionally, I think the immigration judge mentions that other family members in Honduras are still there and not harmed. And I think Osorio explained that situation pretty well. He explained that they live in a state of chaos, that they always have to be alert, that they have to carry weapons with them, and there are some places they just can't go. That, I think, also supports an objective reasonableness here. If you can't live a normal life and you have to carry weapons everywhere, that's not consistent with a lack of risk of persecution. Okay. Thank you very much. Okay. We'll hear from our counsel for the Attorney General. Good afternoon, Your Honor. May it please the Court? My name is Alana Jung, and I'm here on behalf of the Attorney General. The standard of review before this Court is the substantial evidence standard. Under this standard, Mr. Osorio has to identify evidence to compel reversal of the agency's independently dispositive determination that he did not establish that the Honduran government is unable or unwilling to control the private individuals he fears. Unless the Court wants me to address any specific issues, I would like to go through the points that Mr. opposing counsel made, and then I'll address them. Can we agree at the outset, I should have asked Mr. Brzezinski this, the only issue on appeal is the denial of the I-589 application, correct? For asylum and withholding of removal. We don't have any CAT issue, we don't have anything else in front of us. Yes, Your Honor. Okay. With respect to whether there was reference in the record of what happened to the police investigation that occurred in 1997 for the grandmother's death, that's the point. We don't know. We do know from the record that when the police was contacted, they did take action. They did arrest individuals. And even though the uncle's statement said that these individuals were released, we don't know. And that, because we don't know, that's Mr. Osorio's burden of proof to show was it, did it deviate from standard operating procedure? Did the police, were the police unwilling or unable to perform their action? That information or lack thereof does not enable Mr. Osorio to compel reversal of the unable or unwilling determination. Because before this court, even under Ming Dai, his testimony was found credible. But he also has to be, it also has to be persuasive. And it also has to refer to specific facts to enable him to meet his burden of proof. That's not the situation here. And that's why we keep on asking, what do we know from the record? We don't know what happened to the family members. When, more recently, the violent strangulation referred to the death certificate that occurred for the two cousins who unfortunately committed suicides. And as Your Honors mentioned, we don't know to what extent they, whether they were related to the Hernandez family. We don't know, aside from the police investigation that occurred during, after the grandmother's death, we don't have any other information that the other deaths were related to the Hernandez family. All we have are Mr. Osorio's assertions. But his assertion, when the immigration judge considered that evidence along with the other evidence in the record, determined that he, his assertion along with the other evidence, did not enable him to meet his burden of proof of showing government unable or unwilling. And before this court, he hasn't pointed to specific evidence, including his own testimony, specific testimony, showing that, to compel that determination. Let me see. Let me see what else. We don't know the resolution, the country condition evidence. Yes, the country condition evidence is relevant, and the agency did consider the country condition evidence. But along with the country condition evidence, the immigration judge, the agency focused on what happened in this case. And what happened in this case was that the police were given an opportunity, filed a report, they acted. We don't know why the individuals were released. They could have deviated from standard. There wasn't evidence that they deviated from standard operating procedure. We don't know. But we do know that they acted when they were called upon. For the deaths between 1999 and 2005, for the threats between 1999 and 2005, we don't have any police. Mr. Osorio testified that he didn't, the family did not report any of those threats. They didn't report any of the other deaths. So we don't have any evidence in the record showing that the police would be given an opportunity to act for whether they would be unwilling or unable. And because we don't have that identification of the evidence, that is insufficient to compel reversal before this court. I mean, the other thing that sticks in my mind is there's a meaningful amount of time that has passed since the last reported incident, even giving Mr. Osorio Morales all the benefit of the doubt, all the inferences in his favor. I'm not saying that's the standard at all. But there's been a lot of time passed, correct? Yes, Your Honor. The immigration judge considered both what happened in 2014 and 2015, the two latest suicides. And even that time, we don't have any other evidence that Mr. Osorio or any member of his family has been targeted. If you look at the immigration judge's well-founded pure determination, the immigration judge found that there's no indication in the record that anyone was looking after Mrs. Osorio. Anything else had happened to the Osorio family members? We know that at least eight male individuals in the Osorio family are living in Honduras. Yes, in as he described a state of chaos, but that's insufficient to compel reversal of the well-founded pure determination. The eight family members still living there, is that what he testified to? At least eight similarly situated family members are living in Honduras. The eight I'm referring to are the eight cousins, and then he also has at least one brother, and then his father, and I believe two other uncles who are, I say similarly situated, because they are male members of the Osorio family. And aren't some of them living in the same town? They are, Your Honor. Yes, they are. Thank you. We rest on our brief. Mr. Yoon, thanks to you. Mr. Brzezinski, we'll give you a minute if you have any final thoughts you want to convey. Thank you, Your Honor. I would just mention one last issue. Again, in the context of past persecution, there was really only one issue decided, and that's the level of harm. I think the IJ relying on NLA there was misplaced. I think NLA supports consideration of additional family members, as here the motive was family, so attacking other family members because they're of that family is also a threat towards Osorio. And the IJ and the BIA did not apply the child standard at all in this case. The level of harm can be less for a child, and children are more sensitive to harm done towards family members. And I think the Court can and should reverse and remand on this issue alone. No other issue was decided in the context of past persecution. Thank you. Thanks to you. Ms. Yoon, thanks to you as well. We'll take the appeal under advisement, and the Court will stand in recess. That concludes today's arguments.